UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

APR - 8 2011

David J. Bradley, Clerk of Court

BRADFORD N. OESCH, Individually and as Independent Executor of the Estate of NANCY OESCH, Deceased, and as Next Friend of ANGELA NICOLE OESCH and SAMANTHA RENE OESCH, Minors, and DORIS ROACH,

Plaintiffs

vs. C.A. No. 4:11-cv-00770

WOMAN'S HOSPITAL OF TEXAS WOMAN'S HOSPITAL OF TEXAS, INC., JAMES MARK McBATH, M.D., MARK McBATH, M.D., P.A., CENTOCOR, INC., CENTOCOR ORTHO BIOTECH, INC., and JOHNSON & JOHNSON, INC.

Defendants.

## PLAINTIFFS' MOTION TO REMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Pursuant to 28 U.S.C. §1447(c), Plaintiffs file this Motion to Remand and would respectfully show as follows:

## I.
## INTRODUCTION

On March 4, 2011 Defendants Centocor, Inc., Centocor Ortho Biotech, Inc., and Johnson & Johnson, Inc. (hereinafter collectively referred to as the "Removing Defendants") removed this case to federal court claiming that the Plaintiffs' joinder of The Woman's Hospital of Texas, The Woman's Hospital of Texas, Inc., James Mark McBath, M.D., and Mark McBath, M.D., P.A. (hereinafter collectively referred to as the "Local Defendants") in this case is so egregious it constitutes fraudulent misjoinder. However, the Removing Defendants' Notice of Removal is based

almost entirely on misstatements of the Plaintiffs' allegations as well as misapplications of the relevant law. When the Plaintiffs' Original Petition is read in its entirety, there should be no doubt that the joinder of the non-diverse Local Defendants in this case was not only proper, but essential to the prompt, efficient, and economic adjudication of this case. Therefore, this Court lacks subject matter jurisdiction and Plaintiffs respectfully request that this case be remanded to the state court where it was originally filed.

## II.
## BACKGROUND

As set forth in some detail in the Plaintiffs' Original Petition, on December 10, 2008, Dr. James Mark McBath performed a diagnostic laparoscopic operative procedure on Nancy Oesch at The Woman's Hospital of Texas for the purpose of identifying and relieving chronic right upper quadrant abdominal pain that Mrs. Oesch had been experiencing. *See* Exhibit B at ¶ 18-22. Unfortunately, during the course of that operative procedure, Dr. McBath perforated Mrs. Oesch's small bowel. *Id.* The perforation of the small bowel immediately started an infectious process which ultimately was *one of* the medical causes of Mrs. Oesch's eventual death. *Id.* In addition to allegations of negligence against Dr. McBath with respect to both the timing and performance of his operative procedure, the Plaintiffs have also alleged that Dr. McBath was negligent in promptly and properly responding to all of Mrs. Oesch's post-operative complaints. *Id.*

Notwithstanding the fact that Dr. McBath eventually called in other medical consultants in an attempt to treat Mrs. Oesch, the infectious process swiftly spread throughout Mrs. Oesch's body, with various organs failing, and within a week of the first operation, Mrs. Oesch's condition had rapidly deteriorated to such an extent that both of her hands and both of her feet were black with gangrene. *See* Exhibit B at ¶¶ 18-22. It became readily apparent to the physicians who were

attempting to treat Mrs. Oesch that her immune system was severely compromised, and not providing the level of "support" and "resistance" that would be expected from an "uncompromised" immune system. *Id.*

The Plaintiffs' Original Petition alleges that concurrent with Dr. McBath's negligence, the drug marketed under the brand name "Remicade," had significantly suppressed and compromised Mrs. Oesch's immune system to the point that she was unable to recover from what was otherwise an injury she should have survived. *See* Exhibit B at ¶¶ 17-20; 25-28. The Original Petition points out that Mrs. Oesch had previously seen Dr. Ravi Moparty who had, in reliance on the Removing Defendants' advertisement and marketing, prescribed I.V. infusions of Remicade approximately every six to eight weeks, for approximately a year prior to the first surgery performed by Dr. McBath. *See Id.* at ¶ 17. The Original Petition also states that although Mrs. Oesch had discontinued the Remicade infusions several weeks prior to Dr. McBath's first operation, her white blood cell counts (WBC) remained very low. *See Id.* at ¶ 18. A Complete Blood Count (CBC) of October 31, 2008, demonstrated a very low WBC of 3.5 (Reference Interval: 4.0-10.5); Exhibit C LabCorp Report of 11/6/08. In a CBC drawn at 0439 hours on December 11, 2008, following Dr. McBath's operation where he perforated her small bowel, the WBC is only 3.0 (bq) DL (Reference Units: 5.1-11.6). *See Id.* at ¶ 18; Exhibit D The Woman's Hospital of Texas Laboratory Report. These white blood cell counts are evidence that Mrs. Oesch's immune system remained suppressed up to and after the surgery performed by Dr. McBath. The Plaintiffs' Original Petition alleges that Removing Defendants' failure to provide adequate warnings, instructions and information to physicians such as Dr. McBath constituted a marketing defect which rendered Remicade unreasonably dangerous which was also a cause of Mrs. Oesch's death. *See Id.* at ¶¶ 25-28. The Plaintiffs' Original Petition

further alleges that the Removing Defendants' negligence and the marketing defect were causes of Mrs. Oesch's suppressed immune system and death. *See Id.*

The Plaintiffs' Original Petition also alleges that Texas Women's Hospital was negligent on December 28, 2008 when hospital personnel failed to provide Mrs. Oesch with adequate oxygenation while she was away from her hospital room. *See* Exhibit B at ¶ 23-24. The Plaintiffs allege that this negligence precipitated a respiratory arrest and notwithstanding a successful resuscitation, her condition continued to deteriorate with a new, documented permanent brain injury which, in combination with the acts and omissions of Dr. McBath and the Removing Defendants, was also a contributing medical cause to her ultimate death. *Id.*

As will be shown in more detail below, it is respectfully represented that given the facts and pleadings in this case, the joinder of the parties in this case was joinder, and is definitely not a fraudulent joinder.

## III.
## ARGUMENTS AND AUTHORITIES

### A. Standard of Review

A federal court's "first inquiry" must be whether it has subject matter jurisdiction. *Smallwood v. Ill Cent. R.R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004) (en banc); *Wells Fargo Bank, N.A. v. American General Life Insurance Co.*, 670 F.Supp.2d 555 (N.D. Tex. 2009) (discussing why motion to remand should be addressed before motion to sever). A party may remove an action from state court to federal court if and only if the action is one over which the federal court possesses subject matter jurisdiction. See 28 U.S.C. § 1441(a). The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *Manguino v. Prudential Prop & Cas. Ins. Co.*, 276F.3d 720, 723 (5th Cir. 2002). The removing party's burden is heavy given that

"the removal statute should be strictly construed in favor of remand" and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Id.*; *Acuna v. Brown & Root, Inc.*, 200 F.3d335, 339 (5th Cir. 2000).

The Removing Defendants have removed this case pursuant to 28 U.S.C. § 1441, asserting diversity subject-matter jurisdiction under 28 U.S.C. § 1332. Therefore, whether this Court has subject matter jurisdiction depends upon whether the Plaintiffs' claims satisfy the two requirements for diversity jurisdiction: (1) the $75,000 amount-in-controversy requirement, and (2) the complete diversity of citizenship requirement. 28 U.S.C. § 1332(a). Because it is undisputed that the amount-in-controversy exceeds $75,000, the only issue presented for this Court is whether or not there is complete diversity of citizenship amongst the parties.

With respect to the diversity of citizenship requirement, "it is well established that the diversity statutes requires 'complete diversity' of citizenship: A district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same citizenship as any one of the defendants." *Corfiend v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citations omitted). Although Plaintiffs allege that (i) Woman's Hospital of Texas, (ii)Woman's Hospital of Texas, Inc., (iii) James Mark McBath, M.D., and (iv) Mark McBath, M.D., P.A. are residents of Texas, Removing Defendants contend that complete diversity nevertheless exists because the Texas defendants were "misjoined" or "improperly joined." Although the Removing Defendants have at times used these two terms interchangeably, they are actually two distinct legal concepts with disparate analysis.

The Fifth Circuit has recognized that "improper joinder" (also known as "fraudulent joinder" must be established in one of two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2)

inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). However, the Removing Defendants' Notice of Removal does not even allege that there has been actual fraud in the pleading or that the Plaintiffs would be unable to establish a cause of action against the Texas Defendants. Therefore, neither one of these bases is grounds for removal of this case.

Misjoinder is a concept that was first recognized by the Eleventh Circuit and exists "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs v. John Crump Toyoya, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (*citing Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds by *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Although the Fifth Circuit has never expressly adopted *Tapscott's* analysis, it has indicated agreement with that analysis in *dicta* and numerous courts have recognized *Tapscott* as a third basis for removal. *See In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002). However, even when considered as a basis for removal, *Tapscott's* fraudulent misjoinder analysis has not often been successful in the Fifth Circuit. In fact, "the overwhelming majority of those cases have been remanded to state court, often on the ground that even if the parties have been misjoined, such misjoinder is not so egregious as to be fraudulent." *Texas Instruments, Inc. v. Citigroup Global Markets, Inc.*, 266 F.R.D. 143, 147 (N.D. Tex 2010) (collecting cases). *See also In re: Silica Product Liab. Lit.*, 398 F. Supp. 2d 563 (S.D. Tex 2005) (also surveying cases and recognizing the rarity of fraudulent misjoinder).

The fraudulent misjoinder analysis has been described as two-fold: (1) has one defendant been misjoined with another defendant in violation of the applicable joinder rules; and (2) if so, is the misjoinder sufficiently egregious to rise to the level of a fraudulent misjoinder. *Centarus Unity, LP v. Lexington Ins. Co.*, 2011 U.S. Dist. LEXIS 9413 (S.D. Tex 2011). With respect to the first prong of the fraudulent misjoinder analysis, the Fifth Circuit has not indicated whether federal or state joinder laws should be used. *Id.* However, the majority of courts in the Fifth Circuit have concluded state rules should apply while also recognizing that even under federal rules, the analysis would be essentially the same. *Id.* The second prong emphasizes that, "even where a party has been misjoined procedurally under state law, a federal court may not ignore that party for purposes of determining a federal court's diversity jurisdiction unless the misjoinder is egregious, i.e., if the claim against the non-diverse defendant is so unrelated that there is simply no purpose for joinder other than to defeat diversity." *Centarus Southern Oaks, LP v. Lexington Ins. Co.*, 2011 U.S. Dist. LEXIS 2479 (S.D. Tex. 2011).

Rule 40 of the Texas Rules of Civil Procedure states that claims against multiple defendants may be joined in one action if (1) there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) at least one "question of law or fact common to all of them will arise in the action." TEX. R. CIV. P. 40(a). Importantly, "Texas Rule 40 is interpreted in light of a state policy that encourages broad joinder of multiple parties in the same action." *Texas Instruments*, 166 F.R.D. at 148-149. "The 'same transaction requirement' is governed by a logical-relationship test that is borrowed from federal law. *Id.* (citations omitted). As one commentator has stated:

> Language in a number of decisions suggest that the courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court.

7 Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 1653 (citations omitted). The common question"requirement "does not mean that multiple questions of law or fact must be common among the parties; it is satisfied by the presence of a solitary common question."*Id.* (citations omitted). When Rule 40 is applied to the Plaintiffs' Original Petition and the facts of this case, it is evident that not only is the joinder of the defendants in this cause far from fraudulent, it is proper and indeed essential to the efficient adjudication of this case.

**B. The Local Defendants Are Properly Joined**

The Removing Defendants' Notice of Removal is primarily predicated on an apparent misunderstanding of the Plaintiffs' allegations in this case. Contrary to the Removing Defendants' Notice of Removal, the Plaintiffs' claims against the Removing Defendants are not based solely "on the Remicade Treatment from August 2007 to September 2008." True, the Plaintiffs' Original Petition alleges that the physician who prescribed the Remicade, Dr. Ravi Moparty, prescribed Remicade based upon negligent promotions and advertisements that the Removing Defendants were responsible for and that Remicade led to a weakened immune system and ultimately Nancy Oesch's death. *See* Exhibit B at ¶¶ 27-28. However, the Plaintiffs' Original Petition also describes another connection between the negligence of the Removing Defendants and the death of Nancy Oesch that undoubtedly destroys complete diversity jurisdiction. The petition alleges that the Removing Defendants failed to provide adequate warnings, information and instruction to surgeons such as Dr. McBath with respect to the increased risk of performing surgeries on patients whose immune systems had been compromised by the prolonged infusion of Remicade. *Id.* at ¶ 27. Therefore,

there are two categories of claims asserted against the Removing Defendants, (1) negligent advertising, promoting and marketing of Remicade that left Nancy Oesch with a weakened immune system that ultimately was a cause of her death and (2) the failure to provide adequate warnings, instructions and information to physicians such as Dr. McBath which also was a cause of Mrs. Oesch's death. *Id.* at ¶ 28. As will be shown, there should be no doubt that these allegations of negligence are more than sufficient to establish that the joinder of the Local Defendants was proper and certainly did not constitute a joinder so egregious that it was fraudulent.

The propriety of Dr. McBath being joined as a party to this lawsuit is obvious. The operative procedure which Dr. McBath performed on December 10, 2008 was purely elective. For that matter, given that Mrs. Oesch had been suffering from the right upper quadrant abdominal pain for over two years prior to that date, the surgery did not need to be performed until Mrs. Oesch's immune system had recovered from its suppression by Remicade. It is axiomatic that Dr. McBath's decision-making with respect to when to perform his operative procedure, what procedure to perform, the risks that he felt were associated with surgical procedure, and the need to intervene at the earliest opportunity, post-operatively, cannot be discussed or evaluated without also inquiring into what warnings and information Dr. McBath had been provided by the Removing Defendants about the increased risk of serious medical consequences and death due to an immune system compromised and suppressed by Remicade. Of course, if Dr. McBath is properly joined, complete diversity does not exist, and this Motion to Remand must be granted.

Not only does the Removing Defendants' Notice of Removal ignore the connection between their negligence and Dr. McBath's, but they also rely on a number of arguments in support of removal that simply have no support in either fact or law. The Removing Defendants begin by

referring to another lawsuit concerning Mrs. Oesch and make a number of statements, which are in error, with respect to that other lawsuit. The Removing Defendants' errors and misconceptions concerning the other lawsuit are understandable since they probably did not have an opportunity to review all of Mrs. Oesch's medical records prior to removing this case to this Honorable Court. The "other case" is styled: Cause No. 2009-69309, *Bradford N. Oesch, Individually and as Personal Representative of the Estate of Nancy Oesch, Deceased vs. Ravi Moparty, M.D., et al.*, and is currently pending in the Eleventh Judicial District Court of Harris County, Texas. Essentially, this "other case" is a lawsuit brought by Bradford N. Oesch, the Independent Executor of the Estate of Nancy Oesch, Deceased, under the Texas "Survival Statute," seeking recovery for the economic losses, pain and suffering, and other intangible injuries suffered by Mrs. Oesch prior to December 10, 2008. *It is not a wrongful death lawsuit!* The physician-defendant, Dr. Ravi Moparty's negligence is not alleged to have caused Nancy Oesch's death. Although it is alleged that Dr. Moparty negligently mis-diagnosed Nancy Oesch's medical condition and negligently prescribed Remicade, it is not alleged that Dr. Moparty's negligence caused Mrs. Oesch's death. In fact, notwithstanding Dr. Moparty's negligence, in reasonable medical probability, Mrs. Oesch would be alive today but for the intervening negligence of Dr. McBath, the Removing Defendants, and The Woman's Hospital of Texas. Since neither Dr. McBath nor The Woman's Hospital of Texas caused Mrs. Oesch's economic losses and pain and suffering prior to December 10, 2008, it would not be proper for either the personal representative of Mrs. Oesch's Estate or Dr. Moparty to join either Dr. McBath or The Woman's Hospital of Texas as parties in the "other case." Ironically, a portion of the Removing Defendants' package insert warns physicians, such as Dr. Moparty, about not continuing Remicade infusions under certain circumstances after 14 weeks of therapy, one of the

areas of alleged negligence against Dr. Moparty in that case. It is respectfully submitted and alleged in the present case before this Court that the Removing Defendants should have provided a similar clear warning to physicians such as Dr. McBath with respect to the timing of operative procedures and the potential risks associated with those operative procedures in the face of what the Removing Defendants knew about the profound immuno-suppressive effects of Remicade therapy. With all due respect, the elusion to the "other lawsuit" is a rabbit trail paved by a lack of knowledge of the complicated medical facts contained within medical charts that the Removing Defendants may not have read.

Another rabbit trail that appears in the Defendants' Notice of Removal is their discussion that they cannot be found liable under Texas law for Mrs. Oesch's death because of the alleged attenuation between their conduct and Mrs. Oesch's death. For one, the Removing Defendants have not cited any authority that stands for the proposition that whether or not they, as diverse defendants, can eventually be held liable, is relevant to a determination of whether or not removal is proper. *See e.g. Triggs v. John Crump Toyoya, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (to the extent examined, focus is whether or not there is viable claim against *non-diverse defendant*); *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (same). Furthermore, even if a determination of the Removing Defendants' liability was relevant to the Court's removal analysis, they most certainly have not met their "heavy burden" of showing that there is "no possibility" that the Plaintiffs have a valid action against the Removing Defendants for Mrs. Oesch's death. *See McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 336 (5th Cir. 2004). This is particularly true given that there are notations in the medical records including the following from a physician who discussed with Mr. Oesch the role that Remicade played with respect to Mrs. Oesch's declining and

deteriorating medical condition following Dr. McBath's surgery: "I am concerned that her worsening condition . . . may be sequella of her hx remicade and subsequent ▵ [change] in her immune system. At this point she is hemodynamically unstable with sub-optimal oxygenation – condition/prognosis is grim." Exhibit E, The Woman's Hospital of Texas Interdisciplinary Patient Notes of 12/25/08. Finally, determining whether or not the Removing Defendants' negligence is too attenuated would require precisely the type of mini-trial that the Fifth Circuit has repeatedly instructed District Courts not to conduct when determining whether or not removal was proper. *See Id.* However, in the unlikely event that the Court gives credence to this argument, the Plaintiffs would respectfully request jurisdictional discovery to conclusively establish just how close in proximity the Defendants' negligence was to Mrs. Oesch's tragic death. Of course, this same discovery could just as easily take place in state court where there is undoubtedly subject matter jurisdiction.

Most ironically, the Removing Defendants attempt to argue that joinder is fraudulent because these claims are legally different–i.e. healthcare liability claims vs. strict liability and negligence. This is ironic because this is not the first case where the manufacturers of Remicade are alleged to have provided inadequate warnings to physicians and patients with respect to the immuno-suppressive effects and other side effects of Remicade; nor is it the first case in which they have been named as defendants in cases where physicians have also been sued. *See e.g. Centocor Inc., v. Hamilton*, 310 S.W.3d 476 (Tex. Civ. App.–Corpus Christi, 2010, pet. granted) (a multi-million dollar judgment that in which the Removing Defendants' liability with respect to the advertising and marketing of Remicade was affirmed by the Corpus Christi Court of Appeals). As a result, the

Removing Defendants should know better than anyone that their arguments, and especially this one, hold no water.

## C. Joinder Rules And Practical Considerations Call For Remand

The fact that the Removing Defendants and the Local Defendants were properly joined in the original state court proceeding, and the potential problems that can develop if the Local Defendants are severed, is best exemplified by the rights and remedies which the Local Defendants can avail themselves of if they are remanded to state court. Both Dr. McBath and The Women's Hospital of Texas can file third party actions against the Removing Defendants in state court, and/or can name the Removing Defendants as Responsible Third Parties pursuant to the liberal standards of § 33.004. Naming the Removing Defendants as third party defendants and/or Responsible Third Parties could be pursued by the Local Defendants for the purposes of contribution and/or determining joint and several liability with respect to Mrs. Oesch's death. In either case, since the liability of the Removing Defendants is inextricably entwined with the decision-making of Dr. McBath, the liability of the Removing Defendants will be definitively determined in the state court action. Furthermore, if Dr. McBath and/or The Women's Hospital of Texas designate the Removing Defendants as Responsible Third Parties, the Plaintiffs have the right to also join the Removing Defendants in the state court action, in lieu of being irreparably prejudiced by having the Removing Defendants' liability and proportionate fault determined in the state court action without the corresponding opportunity to recover from the Removing Defendants. *See* TEX. CIV. PRAC. & REM. CODE § 33.004(e) (permitting joinder of parties designated as responsible third parties even where such joinder would otherwise be barred by applicable statute of limitations). As a result, if the Local Defendants are severed, there is a good chance that several months from now neither the Court nor

the parties will be any closer to resolving this tragic case than we are today. There is also a good chance that the Removing Defendants' potential liability will be litigated twice, perhaps at the same time – a result which does not favor judicial economy, does not have to happen and would cause unnecessary expense for all parties, including the Removing Defendants. There are also a number of potential issues with respect to the duplication of discovery, comity and even *res judicata* that could arise if the case against the Removing Defendants remains in federal court, the Local Defendants are severed, and two wrongful death lawsuits, involving multiple common questions of fact and law involving the same death are pursued concurrently in state and federal court. In fact, the potential problems posed by the motions the Removing Defendants have filed are precisely what both state and federal joinder law seeks to avoid. Therefore, the Plaintiffs would respectfully submit that the joinder was entirely proper, and most certainly was not so egregious as to constitute fraud.

## IV.
## PRAYER

WHEREFORE, Plaintiffs pray that the Court grant the Motion to Remand and remand this suit to the state court where it was originally filed, or in the alternative, grant the Plaintiffs the opportunity to conduct jurisdictional discovery, and for such further relief, both in law and in equity, to which the Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

**THE LEWIS LAW FIRM**

Craig Lewis
Attorney-In-Charge
State Bar No. 12283500
Federal I.D. No. 3452
John J. Brothers

State Bar No. 24064955
2905 Sackett Street
Houston, Texas 77098
Telephone: (713) 222-8080
Facsimile: (713) 238-7888

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Gene M. Williams, counsel for Defendants regarding Plaintiff's Motion to Remand, but the parties were unable to reach an agreement regarding the motion.

Craig Lewis

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record via certified mail, return receipt requested on the 8th day of April, 2011 as follows:

Mr. Gene M. Williams
Mr. Manuel Lopez
Ms. Kathleen A. Frazier
SHOOK, HARDY & BACON, LLP
JP Morgan Chase Tower
600 Travis, Suite 1600
Houston, Texas 77002
*Counsel for Defendants Centocor, Inc., Centocor Ortho Biotech, Inc. and Johnson & Johnson, Inc.*

Mr. Andrew J. Lehrman
ANDERSON, LEHRMAN, BARRE & MARAIST, LLP
1001 Third Street, Suite 1
Corpus Christi, Texas 78404
*Counsel for Defendants James Mark McBath, M.D. and Mark McBath, M.D., P.A.*

Mr. John S. Serpe
Ms. Nicole Andrews
Mr. William Whitaker

Mr. John S. Serpe
Ms. Nicole Andrews
Mr. William Whitaker
SERPE, JONES, ANDREWS, CALLENDER & BELL, PLLC
Three Allen Center
333 Clay Street, Suite 3485
Houston, Texas 77002
*Counsel for Defendants, CHCA Women's Hospital L.P. d/b/a The Woman's Hospital of Texas*

Craig Lewis