UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BRADFORD N. OESCH, *et al*, | § |
| | § |
|     Plaintiffs, | § |
| VS. | §   CIVIL ACTION NO. H-11-770 |
| | § |
| WOMAN'S HOSPITAL OF TEXAS, *et al*, | § |
| | § |
|     Defendants. | § |

**OPINION AND ORDER**

    Pending before the Court is Defendants Centocor, Inc., Centocor Ortho Biotech, Inc. ("Centocor"),[1] and Johnson & Johnson's[2] ("the removing Defendants") motion to sever Plaintiffs' claims against them from Plaintiffs' claims against all other Defendants. Doc. 4. Also before the Court is Plaintiffs Bradford N. Oesch, Angela Nicole Oesch, Samantha Rene Oesch, and Doris Roach's motion to remand. Doc. 10. The Court first addresses the jurisdictional question contained in Plaintiffs' motion to remand[3] and, having concluded that the case should be remanded to state court, finds that Defendants' motion to sever is moot.

Background

    Plaintiffs filed their original petition in the 151st District Court for Harris County on January 31, 2011 as a survival and wrongful death action against Defendants for their respective roles in the death of Nancy Oesch ("Oesch"). Doc. 1-2. In that petition, Plaintiffs assert that Oesch sought treatment from Dr. Ravi Moparty, apparently for the treatment of chronic pain. *Id.*

---

[1] Centocor asserts that in 2008, "Centocor, Inc. became a part of Centocor Ortha Biotech Inc." Doc. 1 at 4.
[2] Johnson and Johnson is named on the Docket Sheet and in the Plaintiffs' motions as "Johnson & Johnson, Inc." Defendants have informed the Court that the entity accurately is called "Johnson & Johnson." Doc. 1 at 3.
[3] *See Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 529 n.1 (5th Cir. 2006) (holding that the district court was in error for "bypass[ing] the jurisdictional question presented in the motion to remand and proceed[ing] directly to the merits.").

at 12. Although the petition is somewhat unclear on the details of Oesch's treatment by Dr. Moparty, it appears that Moparty suspected Oesch was afflicted with Crohn's Colitis and prescribed a treatment of intravenous ("IV") injections of Remicade, a prescription drug manufactured by Centocor and distributed in Texas by Johnson & Johnson. *Id.* Plaintiffs allege that "Remicade is a very dangerous medication that can have serious effects on an individual's immune system." *Id.*

In September, 2008, Moparty discovered that Oesch did not have Crohn's Colitis and discontinued the Remicade treatment. *Id.* Oesch then sought treatment from Defendant Dr. James Mark McBath beginning on November 25, 2008. McBath obtained Oesch's medical records, which included Oesch's history of one year of IV Remicade treatment, and the results of Oesch's recent blood work indicating very low white blood cell count, red blood cell count, and hemoglobin, all of which indicated that Oesch's immune system had been "compromised" by the Remicade treatment. *Id.* at 13. Plaintiffs allege that, despite the heightened risk of infections, "McBath decided to undertake and to subject Nancy Oesch to elective surgery that can have a number of complication, including but not limited to infections." *Id.*

McBath performed the surgery at Defendant Woman's Hospital of Texas on December 10, 2008 and, during that surgery, perforated Oesch's small bowel—a complication that was not discovered until Oesch reported severe pain after surgery. *Id.* at 14-15. Plaintiffs allege that McBath failed to respond in a timely or appropriate manner to Oesch's complaints of severe pain and instead, without personally visiting Oesch, instructed nurses to administer pain medication. *Id.* Plaintiffs further allege that McBath failed to seek in a timely fashion the assistance and advice of other doctors. By December 12, when McBath re-opened the surgical site to discover the source of Oesch's pain, Oesch was suffering an infection caused by the perforation and that

the infection was worsened by Oesch's drastically lowered immune response after her treatment with Remicade. *Id.* at 16.

Plaintiffs further allege that by December 29, Oesch was still being treated in the Women's Hospital of Texas and had improved to a small extent but that her recovery was dependent on "receiving the appropriate amount and rate of flow of oxygen to her organs." *Id.* at 17. On December 29, Women's Hospital of Texas employees transported Oesch to the radiology department for a CT scan of her abdomen and pelvis. *Id.* The employees "negligently failed to maintain an adequate flow and volume of oxygen to Mrs. Oesch [while she was being transported] . . . [and she] suffered from a deprivation of and/or inadequate supply and rate of oxygen for such a period of time while away from her room that she suffered an anoxic injury to her brain." *Id.* Oesch subsequently died as a result of this injury. *Id.*

Plaintiffs assert that Oesch's death was caused by the actions of all Defendants, including the negligent treatment given to Oesch by McBath and the Women's Hospital of Texas and the improper, negligent, or unlawful labeling and marketing of Remicade by Centocor and Johnson & Johnson. *Id.* at 19-21.

Legal Standard

Federal diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000.00 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a); *Addo v. Globe Life and Accident Ins. Co.*, 230 F.3d 759, 761 (5th Cir. 2000). "Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." *Lincoln Property Co. v. Roche*, 546 U.S. 81, 84 (2005). Where federal diversity jurisdiction exists, a defendant may remove an action from a State court "to the district court of the United

States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The removing party bears the burden of establishing federal jurisdiction. *Allen v. R & H Oil and Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1996); *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir. 1989).

After removal, a plaintiff may move for remand and, if "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal statutes are construed "strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)). All "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). Once a motion to remand has been filed, the burden is on the removing party to establish that federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). All factual allegations are evaluated in the light most favorable to the plaintiff. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).

A removing party can establish federal jurisdiction on the basis of 28 U.S.C. § 1332 by demonstrating that in-state defendants have been "improperly joined." *See Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). To establish improper joinder, a removing party must show either "'(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Id.* (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003). The Fifth Circuit has made it clear that "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to

recover against an in-state defendant." *Id.*

Analysis

Plaintiffs, citizens of Texas, have asserted claims against diverse and non-diverse defendants in this case. The removing Defendants are Centocor, a Pennsylvania corporation with its principal place of business in Pennsylvania, and Johnson & Johnson, a New Jersey Corporation with it principal place of business in New Jersey. Doc. 1 at 4-5; Doc. 1-2 at 5-8. Plaintiffs' claims against these diverse Defendants arise out of the manufacture and marketing of the drug Remicade, which they allege was a cause of Oesch's death. The remaining Defendants are all Texas citizens. Plaintiffs claims against these non-diverse Defendants arise out of the medical care Oesch received in the Texas Women's Hospital.

The removing Defendants have not alleged that the in-state Defendants are joined improperly in the traditional sense described in *Smallwood*. 385 F.3d 568.[4] Instead, and without conceding that the Plaintiffs can state a claim against them, the removing Defendants assert that any claim Plaintiffs assert against them arises out of transactions or occurrences that are unrelated to their claims against the in-state Defendants. Doc. 1 at 6-7. The removing Defendants thus argue that Plaintiffs' joinder of them in this action constitutes "fraudulent misjoinder," as that concept was developed in *Tapscott v. MS Dealer Service Corporation*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated in part on other grounds by Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000). "The Fifth Circuit has not directly applied the fraudulent-misjoinder theory, but it has cited *Tapscott* with approval and has acknowledged that fraudulent misjoinder of either defendants or plaintiffs is not permissible to circumvent diversity jurisdiction." *Centaurus Unity v. Lexington Ins. Co*, 766 F.Supp.2d 780, 789 (S.D.Tex. 2011) (citing *In re Benjamin Moore &*

---

[4] In *Smallwood*, the Fifth Circuit stated that it has "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" 385 F.3d 568, 573 (citing *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003).

*Co.*, 318 F.3d 626, 630–31 (5th Cir. 2002) ("Thus, without detracting from the force of the Tapscott principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction, we do not reach its application in this case.")). Fraudulent misjoinder therefore may constitute "a third possible ground to support a finding of improper joiner." *Texas Instruments Inc. v. Citigroup Global Markets, Inc.*, 266 F.R.D. 143 (N.D.Tex. 2010).

When determining whether the removing defendant has been fraudulently misjoined, the Court asks "(1) [if] one defendant has been misjoined with another defendant in violation of the applicable joinder rules; and (2) if so, is the misjoinder sufficiently egregious to rise to the level of a fraudulent misjoinder." *Centaurus Unity*, 766 F.Supp.2d at 789. Although the Fifth Circuit has given no clear command as to whether the "applicable joinder rules" are the Federal Rules or state rules, district courts in Texas have applied Texas law, in large part because the applicable Texas joinder rule is practically identical to Federal Rule 20(a) and because "the claimant was required to follow the state's joinder rules when it initially brought suit."[5]

Under Texas Rule of Civil Procedure 40(a), claims against multiple defendants may be joined in one action if "there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences" and at least one "question of law or fact common to all of them will arise in the action." Tex.R. Civ. P. 40(a).

Although Plaintiffs' product liability and failure-to-warn claims against the removing

---

[5] *Centaurus Unity*, 766 F.Supp.2d at 789 n.27 (citing *Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co.*, 670 F.Supp.2d 555, 563 (N.D.Tex. 2009)(" A federal court applies state joinder law in assessing whether there has been a misjoinder and whether such misjoinder rises to the level of improper joinder."). *See also See Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 ("Texas has adopted the same requirements for proper joinder" as those in Federal Rule 20(a)); *Texas Instruments Inc.*, 266 F.R.D. at 148, n.3 ("For district courts in Texas, this question [of whether to apply state or federal joinder rules in a *Tapscott* analysis] is largely academic. Texas's joinder rule is identical to its federal counterpart, Crockett . . . and Texas courts rely on federal case law interpreting Federal Rule 20 to guide their interpretation of Texas Rule 40").

Defendants are legally distinct from their medical negligence claims against the in-state Defendants, their claims against both sets of Defendants arise out of the same transaction or series of transactions. Plaintiffs allege that "Remicade is a very dangerous medication that can have serious effects on an individual's immune system," that Oesch took Remicade and suffered the resulting decrease in immune system efficacy and heightened risk of infection, and that that heightened risk was a contributing factor to her subsequent infection and death. Doc. 1-2 at 12-15. Plaintiffs additionally allege that Defendant McBath "was well aware that Mrs. Oesch had been on IV infusions of Remicade for a year prior to his planned surgery, but was either unaware of the effects of Remicade on Mrs. Oesch's immune system . . . and the substantial, increased risk to which he was placing Mrs. Oesch in deciding to perform the purely elective surgery." *Id.* at 14.

Additionally, the claims share common questions of law or fact. Whether McBath negligently misread or disregarded an appropriate prescription drug label or reasonably relied on an inappropriate and insufficient warning label is a question of fact that goes directly to the removing Defendants' liability on Plaintiffs' failure-to-warn claims. Similarly, Oesch's heightened susceptibility to infection as a result of Remicade likely will form part of the inquiry into the reasonableness of the non-diverse Defendants decisions to conduct the initial surgery and their subsequent medical care and also into Plaintiffs' claims alleging that the removing Defendants misrepresented the risk profile of Remicade in their marketing materials and on the product warning label. Because their claims against both sets of Defendants arise out of the same series of transactions or occurrences and involve common questions of fact, the Court finds that the removing Defendants were properly joined in the original state court action.

Even if Defendants were improperly joined, to withstand this motion to remand they must

also show that, "the misjoinder [was] sufficiently *egregious* to rise to the level of a fraudulent misjoinder." *Centaurus Unity*, 766 F.Supp.2d at 789 (emph. added). Misjoinder is egregious when, "the claims against . . . [the diverse defendants] are also 'wholly distinct' and have 'no real connection' to the claims made against" the non-diverse defendants such that the joinder of the diverse defendants "border[s] on a sham." *Centaurus Southern Oaks, LP v. Lexington Ins. Co.*, 2011 WL 96598, *3 (S.D.Tex. 2011) (quoting *Tapscott*, 77 F.3d at 1360). Reviewing the history of the *Tapscott* fraudulent misjoinder concept in the Fifth Circuit, District Judge Joe Fish found that

> "no generally applicable standard has been formulated to guide the determination of when misjoinder is so egregious as to be fraudulent . . . [but that a] survey of the cases from this circuit which have considered the question suggests that misjoinder is so egregious as to be fraudulent only in the following three situations: (1) two or more lawsuits with little or no party overlap have been combined in the same action ( i.e., there are multiple plaintiffs and defendants, but each plaintiff or discrete set of plaintiffs is suing only one defendant or a discrete set of defendants); (2) numerous plaintiffs have sued a common defendant and assert claims that have no shared factual element other than the presence of the common defendant; and (3) a single plaintiff or group of plaintiffs has joined multiple defendants in the same action and is asserting claims against each defendant that are both factually and legally unrelated."

*Texas Instruments Inc.*, 266 F.R.D. at 149,

Here, only the third exception may act as a bar to Plaintiffs' claims against the removing Defendants. To show that the misjoinder is so egregious as to be fraudulent, the removing Defendants must show the absence of any common question of fact or law between Plaintiffs' claims against them and Plaintiffs' claims against the non-diverse Defendants. *See id.* at 151 n10 ("It is not enough for the claims to be either *legally* unrelated *or* factually unrelated *but not* both. In cases in which a single plaintiff or group of plaintiffs asserts different causes of action against various defendants, courts have declined to find that the defendants are fraudulently misjoined where the plaintiff's various claims involve common operative facts."). The existence of the

common questions of fact that the Court discussed above is sufficient to show that the purported misjoinder is not so egregious as to be fraudulent. Even assuming that the requirements of Rule 40 are not satisfied, the Defendants have failed to demonstrate that their joinder in this action is so egregious as to be fraudulent.

The Court's decision does not deny the diverse Defendants the opportunity to remove the case against them to federal court should the state court determine that Plaintiffs' claims against them should be severed. *See Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (finding that removal jurisdiction exists after state court severance of a plaintiff's improperly joined claims against diverse defendants). The result also respects the Fifth Circuit's command that removal statutes are construed "strictly against removal and for remand" (*Eastus, L.P.*, 97 F.3d 100, 106) and that all "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna*, 200 F.3d 335, 339.

Conclusion

For the foregoing reasons, the Court hereby

**ORDERS** that Plaintiffs' motion to remand this case to the 151st District Court of Harris County (Doc. 10) is **GRANTED**. Further, the Court

**ORDERS** that Defendants Centocor, Inc., Centocor Ortho Biotech, Inc., and Johnson & Johnson's motion to sever (Doc. 4) is **DENIED.**

SIGNED at Houston, Texas, this 20th day of March, 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE